Filed 5/19/20
See Concurring Opinions

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071361 |
| v. | (Super.Ct.No. RIF1603061) |
| RICHARD VALLES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Warren J. Williams, Paige B. Hazard and Steven T. Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II, section 1.

1

Richard Valles, defendant, got into a fight with the victim Michael Carmona, after Carmona pushed defendant's girlfriend down at a river-side homeless camp. Defendant had to break off the fight when he felt a seizure beginning and left the camp. In the meantime, his tent-mate and one-time codefendant, Jesus Renteria, attacked the victim with a knife, inflicting multiple serious wounds. When defendant returned to the camp, he saw a piece of carpet covering the victim where he lay on the ground. Defendant obtained a firearm from his tent and shot the victim in the head, claiming he did so to put the victim out of his misery, although he thought the victim was dead. After a trial, the jury returned verdicts convicting defendant of first-degree murder (Pen. Code, § 187, subd. (a))[1] and finding that in the commission of the murder defendant personally and intentionally discharged a firearm causing the death of the victim (§ 12022.53, subd. (d)). Defendant was sentenced to state prison for an aggregate term of 50 years to life and appealed.

On appeal, defendant argues that (1) his due process rights were violated by the trial court's failure to instruct the jury on a theory of heat of passion voluntary manslaughter; (2) the court erred in imposing the minimum restitution fine and other fees and assessments without determining if defendant had an ability to pay; and (3) the term imposed for the gun discharge enhancement must be remanded to allow the court to exercise discretion to consider a lesser included enhancement. We affirm.

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

# I.

## BACKGROUND

Defendant and his girlfriend, Cricket, lived in a tent with Jesus Renteria in a tight-knit homeless camp along the Santa Ana River in Riverside. Defendant was acquainted with victim Michael Carmona, known as "Bear," and had fought with him on occasion.

In June 2016, defendant and Carmona started fighting after Carmona pushed Cricket down and struck her, after kicking Cricket's dog. Defendant and Carmona wrestled for 15 or 20 minutes, until defendant felt he was going to have a seizure and let go of Carmona to go down to the river. When he left, "Colt" intervened and administered a choke hold until Carmona lost consciousness.

A short time later, when Carmona regained consciousness, Renteria went into a tent, came out with a knife and proceeded to stab Carmona multiple times. When the stabbing stopped, Carmona emitted gargling and gasping sounds and appeared to be dying. Renteria handed the knife to another camp resident, Peter Strother, who had observed the stabbing, and left. Strother put the knife in a container inside his tent, to keep it for investigators. After Renteria left, Strother could hear Carmona breathing. Defendant returned to the camp, where Strother was waiting, carrying a rifle. Defendant walked up to the victim, whose face was covered with a carpet, and pulled the trigger, after which Strother saw and heard no further movement or breathing from the victim.

On June 18, 2016, law enforcement officers found Carmona in a shallow grave approximately 25 feet from defendant's tent, with the assistance of a cadaver-sniffing

3

dog.  The body was still wrapped in carpet.  Officers also discovered a .22-caliber bolt-action single-shot rifle in defendant's tent, and they recovered the knife and a .22-caliber casing from Strother's tent.

By the time Carmona's body was found, it was already moderately decomposed.  The pathologist noted several knife wounds, but not all of them did major damage.  One wound punctured the victim's lung, and another pierced the lower chest and upper abdomen, either of which could have eventually killed the victim within a matter of minutes.

In addition, there was a gunshot wound to the victim's head, which fractured the skull from the inside.  The bullet, which did not exit the skull, was found inside the brain.  The bullet wound would have caused death immediately.  Any of the three major wounds could have killed the victim, but death would have occurred over an interval of minutes.

The ultimate cause of death was attributed to homicidal violence, meaning there was more than one type of violent act.  The pathologist could not say for certain, based on the decomposition of the body, that the victim was alive when the bullet entered his brain.

Defendant was charged with murder (§ 187, subd. (a)) along with an enhancement allegation that he personally and intentionally discharged a firearm causing great bodily injury and death within the meaning of section 12022.53, subdivision (d).  He was tried by a jury, where defendant testified in his own defense.

4

According to defendant, when he felt a seizure coming on, he went down to the river, and while there he heard Renteria say, "Oh s—t, he's dead" or "Oh s—t, he's gone." Approximately 10 minutes later, defendant returned to the camp, where he saw Carmona lying on his back, covered in blood, and not breathing. Carmona was wrapped in a carpet. Defendant knew he was not breathing because he put his hands in front of the victim's nose to check for breathing. Carmona was not moving at all or making any noise. Defendant then went into his tent to get his gun, walked over to Carmona and shot him. By this time, Carmona's head was covered.

Defendant explained he shot Carmona because he thought the brain could still feel pain, likening the situation to when a chicken is decapitated, and defendant wanted to put Carmona at ease. He denied telling officers that Carmona was moving, although he recalled telling them that he saw movement that he thought was Carmona's nerves settling. He explained that when he told police he might have seen movement, he did not really see movement, but was just freaking out. He was sure Carmona was dead. Later, defendant buried the victim.

On rebuttal, Detective Cobb referred to defendant's interview, taped at the station, in which defendant denied any involvement in the homicide until being confronted with statements of other witnesses. Defendant never told the detective anything about thinking that dead people feel pain, but, instead, told the detective he was putting Carmona out of his misery after acknowledging there was movement on the part of the victim.

5

Defendant was convicted as charged of first-degree murder (§ 187, subd. (a)), and the jury also returned a true finding that defendant discharged a firearm in the commission of the murder. On August 3, 2018, the court sentenced defendant to state prison for an aggregate term of 50 years to life, comprised of a term of 25 years to life for the first-degree murder, as well as 25 years to life for the gun discharge enhancement.

In addition, the court ordered defendant to pay victim restitution in the amount of $925.00 pursuant to section 1202.4, subdivision (f), along with $300, the minimum restitution fine, pursuant to section 1202.4, subdivision (b), and a $300 parole-revocation restitution fine, which was suspended unless parole is revoked, pursuant to section 1202.45, subdivision (c). The court also imposed a criminal conviction assessment fee of $30 pursuant to Government Code section 70373, and an operations assessment in the amount of $40, pursuant to Penal Code, section 1465.8, subdivision (a)(1). On January 14, 2019, the court modified the sentence, finding defendant lacked the ability to pay the booking fee, the fee for preparation of the probation report, or the presentence incarceration costs, staying the imposition of those amounts.

Defendant timely appealed.

## II.

## DISCUSSION

1.  *The Trial Court Was Not Required to Instruct on Heat of Passion Voluntary Manslaughter.*

*Background*

Defendant requested instructions on voluntary manslaughter based on sudden quarrel or heat of passion as a lesser offense of murder. The trial court concluded there was no viable theory for voluntary manslaughter because of all the breaks in time and because defendant's own testimony was completely contrary to a theory of sudden quarrel, heat of passion. The court subsequently instructed the jury on first- and second-degree murder, as well as involuntary manslaughter.

Defendant argues the trial court erred in concluding there was "no viable theory for voluntary manslaughter" and in failing to instruct on the lesser included offense. Specifically, he claims that the failure to instruct on manslaughter constitutes federal constitutional error because it relieved the prosecution of its burden to prove malice beyond a reasonable doubt. We disagree.

*Legal Principles*

On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113.)

7

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154, quoting *People v. St. Martin* (1970) 1 Cal.3d 524, 531.)

The obligation to instruct on general principles includes the duty to give instructions on lesser included offenses when the evidence raises a question as to whether all elements of the charged offense were present, but not when there is no evidence that the offense was less than that charged. (*People v. Breverman, supra,* 19 Cal.4th at p. 154, citing *People v Hood* (1969) 1 Cal.3d 444, 449-450; *People v. Noah* (1971) 5 Cal.3d 469, 479; *People v. Osuna* (1969) 70 Cal.2d 759, 767.) "Such instructions [on lesser included offenses] are required when, but only when, a jury could reasonably conclude that the defendant committed the lesser offense but not the greater one." (*People v. Hardy* (2018) 5 Cal.5th 56, 98, citing *People v. Breverman, supra,* 19 Cal.4th at pp. 161-162.)

Voluntary manslaughter is a lesser included offense of murder. (*People v. Duff* (2014) 58 Cal.4th 527, 561.) "Heat of passion, which likewise reduces murder to voluntary manslaughter, arises when the defendant is provoked by acts that would 'render an ordinary person of average disposition "liable to act rashly or without due deliberation

and reflection, and from this passion rather than from judgement'" [citation], and kills while under the actual influence of such a passion [citation]." (*Id.* at p. 562.)

A defendant must actually be motivated by passion in committing the killing. (*People v. Beltran* (2013) 56 Cal.4th 935, 951.) "'[I]f sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter. . . . '" (*Beltran, supra,* at p. 951, citing *People v. Wickersham* (1982) 32 Cal.3d 307, 327, disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 201.)

Here, the evidence is uncontradicted that after wrestling with the victim (over the victim's assault on defendant's girlfriend) for several minutes, defendant went down to the river because he felt a seizure coming on. By his own testimony, he was down at the river for about 20 to 30 minutes before returning to the camp. In the meantime, he had heard Renteria say either that "he's dead" or "he's gone," and when defendant returned to the camp 10 minutes after hearing that statement, he saw the victim lying helpless on the ground, covered with blood and not breathing. Defendant did not testify that he was still upset or angry over the victim's assault on defendant's girlfriend, nor did he testify that he felt threatened by the victim.

While defendant described feeling "freaked out" when he told police investigating the crime that he had seen movement on the part of the victim as he lay on the ground, he did not describe any passion that would render an ordinary person of average disposition "liable to act rashly or without due deliberation and reflection," and killing under the

influence of that passion. He certainly did not describe his actions at the time of the shooting as having been performed under heat of passion as he entered his tent to get his gun, and then return to the victim to shoot him in the head. He had cooled off.

By a parity of reasoning, defendant could not rely on the victim's earlier assault on defendant's girlfriend as creating sufficient anger to mitigate the crime, warranting a voluntary manslaughter instruction, where the victim-aggressor had been rendered helpless before defendant returned to the camp and went for his gun. In any event, defendant's testimony, and his pretrial statements to police, that he shot the victim to put him out of his misery, precludes any notion that he was motivated by any desire to defend his girlfriend, or because he was "freaked out," when he obtained his rifle from his tent and then shot the helpless (and either dying or dead) victim in the head.

To suggest that defendant's actions were comparable to those of an ordinary person of average disposition is unreasonable. An ordinary person of average disposition, upon seeing a stabbing victim bleeding on the ground, does not get a rifle to finish him off. The average person of ordinary disposition would seek emergency assistance for the victim, or so we hope. The fact that the defendant did not seek emergency assistance for the victim, and, instead, procured a rifle to put him out of his misery, speaks volumes about defendant's mental state at the time of the shooting. He intended to make sure the victim was dead.

Thus, the only evidence of defendant's mental state was that of premeditation and deliberation when he entered his tent, obtained the firearm, returned to where the victim

10

lay, and shot him in the head. There is no evidence that the offense was less than that charged. (*People v. Breverman, supra,* 19 Cal.4th at p. 154.) There was no error in refusing to instruct the jury on the theory of heat of passion voluntary manslaughter.

2. *The Trial Court Properly Considered Defendant's Inability to Pay in Ordering the Minimum Restitution Fine.*

Defendant argues that the $300 restitution and parole revocation restitution fines (§§ 1202.4, subd. (b), 1202.45), the $40 court operations fee (§ 1465.8), and the $30 court facilities fee (Govt. Code, § 70373) must be vacated because the imposition of those fees violated his due process rights.

Defendant acknowledges that the court did make a finding that he lacked ability to pay for the preparation of the probation report, the booking fee, and the presentence incarceration costs; he also acknowledges that he failed to object to the imposition of the restitution fines. Nevertheless, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), he argues that the court improperly imposed the additional fines and fees. We disagree.[2]

*Restitution Fines*

We begin by noting that while *Dueñas* and other recent decisions have treated restitution fines as comparable to the various fees imposed for court operations, probation

---

[2] Justice Miller concurs with the result, and Justice Menetrez agrees with the concurrence. However, Justice Menetrez objects to the plurality opinion, arguing that Justice Miller should be replaced as the author. Justice Menetrez does not cite any authority or Internal Operating Procedures requiring any specific panel action where the separate opinions are unanimous on the outcome.

11

report preparation and court facilities fees, they are not equivalent, and must be treated differently. The imposition of a restitution fine is punishment. (*People v. Allen* (2019) 41 Cal.App.5th 312, 321, citing *People v. Guillen* (2013) 218 Cal.App.4th 975, 984.) Court fees are not. (*People v. Alford* (2007) 42 Cal.4th 749, 757; see also *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112.) Because the restitution fine is intended as punishment, it is subject to challenge under the excessive fines clause of the Eighth Amendment of the federal Constitution and article I, section 17 of the California Constitution.

It has long been held that the law mandates the sentencing court to impose a restitution fine of at least the statutory minimum and is not required to make a finding of a defendant's ability to pay before imposing the statutory minimum fine. (§ 1202.4, subd. (c); *People v. Avila* (2009) 46 Cal.4th 680, 729.) In fact, the statute expressly states that inability to pay is not a compelling and extraordinary reason not to impose a restitution fine. (§1202.4, subd. (c).) Because the court imposed the statutory minimum restitution fine, no ability to pay hearing was required. (§ 1202.4, subd. (d); *People v. Wall* (2017) 3 Cal.5th 1048, 1076, citing *People v. Covarrubias* (2016) 1 Cal.5th 838, 935-936.)

An ability-to-pay hearing is required only where the court imposes a restitution fine exceeding the statutory minimum.[3] (§ 1202.4, subd. (c); *In re Enrique Z.* (1994) 30

---

[3] The concurrence by J. Miller, to which J. Menetrez concurs, agrees there is no need for a remand, but would have concluded it is fundamentally unfair to impose a fine on those who could not afford to pay the fine. However, our colleagues do not address

Cal.App.4th 464, 468-469.)  As the trial court is not required to make express findings concerning a defendant's ability to pay a restitution fine, the absence of findings does not demonstrate it failed to consider this factor.  (*People v. Nelson* (2011) 51 Cal.4th 198, 227, citing *People v. Gamache* (2010) 48 Cal.4th 347, 409.)  We disagree with the conclusion that there is a due process requirement that the court hold an ability to pay hearing before imposing a minimum restitution fine.

Additionally, defendant has forfeited any objection to the imposition of the restitution fine and the parole revocation restitution fine by failing to object at the sentencing hearing.  (*People v. Gamache, supra,* 48 Cal.4th at p. 409; *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40; *People v. Forshay* (1995) 39 Cal.App.4th 686, 689; *People v. Gibson* (1994) 27 Cal.App.4th 1466, 1468-1469.)

The decision in *Dueñas* broke with longstanding precedent in requiring the court to consider ability to pay before imposing the statutory minimum restitution fine and permitting an appellate challenge to the fine absent an objection in the trial court.  The decision also ignores precedents holding that section 1203.4 presumes a defendant has the ability to pay the fine (*People v. DeFrance* (2008) 167 Cal.App.4th 486, 505, citing *People v. Romero* (1996) 43 Cal.App.4th 440, 448), and that the court is not required to make express findings on that issue.  (*People v. Hennessey* (1995) 37 Cal.App.4th 1830,

_____

the express language of section 1202.4, subdivision (c) which expressly provides, "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine.  Inability to pay may be considered only in increasing the amount of the restitution fine *in excess of the minimum fine pursuant to paragraph (1) of subdivision (b).*"  (Italics added.)

13

1836.)  We therefore decline to follow *Dueñas* as it pertains to the imposition of a statutorily minimum restitution fine.

*Court Facilities Fee*

As for the court facilities fee pursuant to Government Code, section 70373, the issue was not forfeited by defendant's failure to object, pursuant to *Dueñas*.  (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 138; but see *People v. Frandsen, supra,* 33 Cal.App.5th at p. 1153.)  However, that does not mean remand is required.

The record does not establish that defendant has a present inability to pay.  While he was homeless at the time of the offense, and has since been committed to state prison, this circumstance does not necessarily establish an inability to pay absent evidence he is ineligible for prison work programs.  (See *People v. Gamache, supra,* 48 Cal.4th at p. 409.)  A court may consider a defendant's ability to earn prison wages in determining ability to pay.  (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)

As defendant will be serving a lengthy prison sentence and the amount of the fees is small, it is appropriate for the court to consider the wages that he may earn in prison.  (See *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's ability to obtain prison wages]; § 2085.5 [outlining how a restitution fine balance may be collected from prison wages].)  Absent evidence defendant is not eligible for work while committed to state prison, he has not met his burden of establishing his inability to pay.  (See *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)

Thus, remand is unnecessary.

3. *The Trial Court Properly Understood the Extent of Its Discretion in Imposing the Gun Discharge Enhancement.*

At trial, the jury made a true finding on the gun discharge enhancement allegation pursuant to section 12022.53, subdivision (d). In supplemental briefing, defendant argues that the gun discharge enhancement pursuant to section 12022.53, subdivision (d), must be reversed and remanded because the trial court did not understand that the extent of its discretion included the discretion to impose a lesser enhancement pursuant to either section 12022.53, subdivision (b) or (c).

Defendant does not argue that the enhancement is unsupported by substantial evidence, or that there is a legal impediment to imposition of the enhancement. Instead, he relies on the recent decision in *People v. Morrison* (2019) 34 Cal.App.5th 217, in arguing that remand is compelled because the trial court did not appreciate the scope of its discretion pursuant to the statutory amendments facilitated by Senate Bill 620. We disagree.

Section 12022.53, subdivision (d), provides that "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Subdivision (j) of section 12022.53 provides, "For the penalties in this section to apply,

15

the existence of any fact required under subdivision (b), (c), or (d) *shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact.*"  (Italics added.)

Prior to 2017, section 12022.53, subdivision (h), prohibited the trial court from striking an allegation under the section or a finding bringing a person within the provisions of the section, notwithstanding section 1385.  (Former § 12022.53, subd. (h).)  However, in 2017, the Legislature enacted Senate Bill 620 (Stats. 2017, ch. 682 § 2, pp. 5104-5106, eff. Jan. 1, 2018, amending §§ 12022.5 and 12022.53).  The Legislative Counsel's Digest explains that SB 620 "would delete the prohibition on striking an allegation or finding and, instead, would allow a court, in the interest of justice and at the time of sentencing or resentencing, to strike or dismiss an enhancement otherwise required to be imposed . . . ."

Notably, both the current and former versions of subdivision (h) of section 12022.53 referred to a trial court's discretion to dismiss or strike pursuant to section 1385.  The power to dismiss an action includes the power to dismiss or strike an enhancement.  (*People v. Thomas* (1992) 4 Cal.4th 206, 209; *People v. Luckett* (1996) 48 Cal.App.4th 1214, 1218.)

But the power to dismiss or strike does not necessarily include a broad discretion to impose a lesser enhancement.  Nothing in the language of section 1385, nor in the cases interpreting the trial court's discretionary authority, refers to a court's discretion to impose a lesser enhancement, *except* "when a greater enhancement found true by the trier

16

of fact is either legally inapplicable or unsupported by sufficient evidence." (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396 [§ 12022.53 enhancement precluded by conviction of offense not listed in § 12022.53, subd. (a)]; *People v. Strickland* (1974) 11 Cal.3d 946, 961; *People v. Lucas* (1997) 55 Cal.App.4th 721, 743; *People v. Allen* (1985) 165 Cal.App.3d 616, 627 [armed enhancement per § 12022 imposed where § 12022.5 did not apply to conviction]; *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001-1002 [§ 12022, subd. (b) deadly weapon enhancement substituted for § 12022.53, subd. (b) where BB or pellet gun was used and did not qualify as a firearm under the statute].)

Citing these authorities, Division Five of the Court of Appeal, First Appellate District recently held that the amendment to section 12022.53, subdivision (h), conferred on trial courts the authority to impose lesser enhancements in the exercise of the court's discretion. (*People v. Morrison, supra,* 34 Cal.App.5th at p. 222.) However, the notion that Senate Bill 620 confers a broad discretion to impose a lesser enhancement whenever the court, in its discretion, determines it is appropriate does not logically flow from a body of authority holding that a lesser enhancement may be imposed where there is a legal impediment to the imposition of a greater enhancement.[4] As reviewing courts, our role in construing a statute should ordinarily be to determine the objective meaning of its

---

[4] In his concurrence, Justice Menetrez incorrectly states, "So the question is whether, *having stricken an enhancement pursuant to amended section 12022.53*, the sentencing court has the power to impose an uncharged lesser included enhancement." (Conc. opn., p. 3 [italics added].) The record shows that the trial court refused to strike the § 12022.53, subd. (d) enhancement, so the reasoning by my colleague is inapposite.

provisions, and we may not rewrite a statute to conform to a presumed intent that is not expressed. (*People v. Statum* (2002) 28 Cal.4th 682, 692.)

The express language of sections 1385 and 12022.53, subdivision (h) refers only to dismissing (or striking) actions or enhancements; neither section authorizes the substitution of a lesser enhancement for a greater enhancement, properly found true at trial, and for which there is no legal impediment to imposition. It does not give the court the right to disregard the verdict of a jury and pronounce a sentence that does not respond to the verdict as rendered. (*People v. Superior Court* (*Prudencio*) (1927) 202 Cal. 165, 173.)

California courts have refused to permit trial courts to invoke section 1385 to reduce a verdict of first-degree murder to second-degree murder (*People v. Superior Court* (*Prudencio*), *supra*), or to reduce the offense of conviction to an uncharged lesser related offense (*People v. Smith* (1975) 53 Cal.App.3d 655, 657-658), or to disregard sentencing factors, which similarly were not included as offenses or allegations in an accusatory pleading. (*In re Varnell* (2003) 30 Cal.4th 1132, 1137.)

Defendant appears to have conflated a trial and/or appellate court's authority to modify a verdict, finding or judgment upon a motion for new trial or on appeal where the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree of the thereof. (§ 1181, subd. (6).) That section also authorizes a trial court, upon a motion for new trial or on appeal, to impose lesser punishment when the verdict or finding is contrary to law or evidence and where the

18

court or jury has authority to recommend or determine the punishment to be imposed. (§ 1181, subds. (6), (7).) In other words, a trial or appellate court may modify a judgment where there is a legal impediment to imposition of punishment pursuant to a finding made by the jury. (*People v. Fialho, supra,* 229 Cal.App.4th at pp. 1395-1396.) But the authority to do so is not conferred by section 1385.

To date, one other court has recently rejected the reasoning of *Morrison* in a published decision, concluding that prosecuting authorities have the sole discretion to determine what charges to bring. (*People v. Tirado* (2019) 38 Cal.App.5th 637, 644, review granted Nov. 13, 2019, S257658 [no change in publication status per Cal. Rules of Court, rule 8.1105(e)(1)(B)], citing *People v. Birks* (1998) 19 Cal.4th 108, 134.) We are of the same opinion. Support for this interpretation is found in subdivision (j) of section 12022.53, requiring pleading and proof of any gun use or discharge allegation before imposing an enhancement based on that allegation. The pleading and proof requirement is inconsistent with any presumption that the true finding on subdivision (d) of section 12022.53 includes a true finding on any lesser enhancements.

Here, an allegation was charged pursuant to section 12022.53, subdivision (d), and the jury found that allegation to be true. No other enhancements were alleged in the information, nor found to be true. Absent a legal impediment to imposition of that enhancement, it was not within a trial court's section 1385 discretion to unilaterally disregard the jury's finding and impose a lesser, uncharged and unfound, enhancement. Therefore, we decline to follow the conclusion of *Morrison* that the amendments to

19

sections 1385 and 12022.53, subdivision (h), confer upon the trial court a broad discretion to not only dismiss or strike an enhancement, but to exercise discretion to impose a lesser enhancement.

In the absence of a legislative pronouncement to that effect, and in the absence of circumstances showing that the greater enhancement is either legally inapplicable or unsupported by sufficient evidence, the scope of sections 1385 and 12022.53, subdivision (h), authorizes a court to exercise discretion, in the furtherance of justice, to strike or dismiss a gun discharge enhancement only, unless there is a legal impediment to imposition of the greater enhancement.

## III.

### DISPOSITION

The judgment is affirmed. The concurring opinion of Justice Miller contains the majority view on the analysis of issue number 2, ability to pay restitution fine. However, the majority reach the same result as the lead opinion.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ     
P. J.

[*People v. Valles*, E071361]

Miller, J., concurring

I concur in all aspects of this opinion with the exception of the analysis of issue number 2, ability to pay the minimum restitution fine.

I concur in the result the lead opinion reaches in finding that remand is not necessary for an ability to pay hearing for the $300 minimum restitution fine imposed pursuant to Penal Code section 1202.4, subdivision (b); the parole revocation fine imposed pursuant to Penal Code section 1202.45; and the fees imposed pursuant to Government Code section 70373 and Penal Code section 1465.8 after the recent case of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).[1] However, I would resolve the issue differently from the lead opinion as to the minimum restitution fine. In *Dueñas*, the court recognized, "[u]nlike the assessments . . . the restitution fine is intended to be, and is recognized as, additional punishment for a crime." (*Id*. at p. 1169.) It found that even though a minimum restitution fine was punishment, it was fundamentally unfair to impose the fine on those who could not afford to pay the fine. (*Id.* at pp. 1169-1170.)

In *Dueñas*, the court addressed section 1202.4 and found, "The statutory scheme thus results in a limitation of rights to those who are unable to pay. The heart of the due

---

[1] The lead opinion appears to find that *Dueñas* applies to the fee imposed pursuant to Government Code section 70373. The lead opinion does not address the fees imposed pursuant to Penal Code section 1465.8 but it appears it would agree the same analysis would apply as to the Government Code section 70373 fee. We agree with the lead opinion that even if an ability to pay hearing was required, any failure to hold one was clearly harmless.

1

process inquiry is whether it is 'fundamentally unfair' to use the criminal justice system to impose punitive burdens on probationers who have 'made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of [their] own . . . .' [Citation.] Penal Code section 1202.4 is not a substitute for due process." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1171, fn. omitted.) It concluded that a trial court should impose and stay the minimum restitution fine until the People could show the defendant had an ability to pay the fine. It is this due process argument that defendant is raising on appeal in contesting the imposition of the minimum restitution fine, not that the fine was excessive.[2]

This court in *People v. Jones* (2019) 36 Cal.App.5th 1028, 1033 rejected that a defendant could be found to have forfeited a *Dueñas* claim as to a minimum restitution fine imposed pursuant to Penal Code section 1202.4, subdivision (b) because it was a novel argument and could not have been anticipated by the defendant prior to *Dueñas*. (*Dueñas*, at pp. 1033-1034.) Similarly, here, I would find that defendant in this case has

---

[2] We also note that in *Dueñas*, the court noted that an Amicus Curiae brief had been filed by the Los Angeles County Public Defender arguing that imposing a restitution fine without evaluating the defendant's ability to pay also violated the ban on excessive fines in the United States and California Constitutions. The *Dueñas* court stated that "The due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that '[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process.'" (Dueñas, supra, 30 Cal.App.5th at p. 1171, fn. 8) As such, the *Dueñas* court recognized the potential for an *additional* argument that the failure to conduct an ability to pay hearing violated the ban on excessive fines and fees but it analyzed the issue as a violation of due process.

not forfeited the *Dueñas* argument that an ability to pay hearing is required as to the minimum restitution fine.[3]

Such conclusion does not change the result because even if *Duenas* does require an ability to pay finding as to a minimum restitution fine, any conceivable error in failing to make such finding was harmless.  As the lead opinion found for the fees imposed, any conceivable error was additionally harmless for the $300 restitution fine as defendant was given a lengthy sentence and could pay the fine out of his prison wages.

MILLER _____
J.

---

[3] The California Supreme Court will ultimately decide this issue as it has granted review in *People v. Kopp,* review granted on November 13, 2019, S257844.

[*People v. Valles*, E071361]

MENETREZ, J., Concurring.

The opinion authored by Presiding Justice Ramirez is not a majority opinion. No member of the panel joins the analysis in Part 2 of the Discussion concerning *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), though we are unanimous as to the result. I feel compelled to point this out because otherwise readers could easily be misled. Only by reading the disposition and understanding its import (or by noticing that no one else has signed Presiding Justice Ramirez's opinion) would a reader be able to determine that not everything in Presiding Justice Ramirez's opinion is the opinion of the court. Given that Court of Appeal opinions (both published and unpublished) are often read in snippets online, dispositions are rarely read by anyone but the parties, and signatures are probably read even less, the potential for confusion here is far from trivial.

In addition, Presiding Justice Ramirez is publishing his *Dueñas* analysis, which is not joined by any other member of the panel and conflicts with this division's published precedent in *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031-1034 (*Jones*), which held that a *Dueñas* challenge to a pre-*Dueñas* minimum restitution fine is not forfeited by failure to raise it in the trial court. Presiding Justice Ramirez's opinion does not explain why he is declining to follow *Jones*; the opinion does not even acknowledge that he is doing so. Moreover, in a footnote within his *Dueñas* analysis, Presiding Justice Ramirez erroneously refers to his own opinion as "the plurality opinion." (Lead opn., *ante*, at p. 11, fn. 2.) "An opinion is characterized as a plurality opinion when it has more signatories than any other opinion supporting the judgment in the cause,

1

but less than a majority." (Cal. Style Manual (4th ed. 2000) § 1:10, p. 13.) Presiding Justice Ramirez's opinion has the same number of signatories as every other opinion in this case (namely, one), and every opinion in the case supports the judgment (on which we are unanimous). In sum, Presiding Justice Ramirez is publishing a dissenting view on the *Dueñas* issue that is inconsistent with our division's published precedent, and he is presenting it as a plurality opinion.

Justice Miller is the only member of the panel who is in the majority on every issue, both reasoning and result. Our division's policy (as well as common sense) dictates that Justice Miller should therefore author the majority opinion. But my colleagues have chosen a different path, with Presiding Justice Ramirez authoring a lead opinion that expresses a minority analysis of the *Dueñas* issue.

For my part: I concur in the judgment and in Presiding Justice Ramirez's opinion except as to Parts 2 and 3 of the Discussion. I also concur in Justice Miller's analysis of the *Dueñas* issue.

All that remains is for me to address the split between *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*) and *People v. Tirado* (2019) 38 Cal.App.5th 637, review granted November 13, 2019, S257658 (*Tirado*). Our division recently published an opinion rejecting *Morrison* and following *Tirado*. (*People v. Yanez* (2020) 44 Cal.App.5th 452, review granted Apr. 22, 2020, S260819 (*Yanez*).) In the present case, Presiding Justice Ramirez (joined by Justice Miller) offers his own analysis in support of following *Tirado*. I am not aware of any basis to depart from our division's decision in *Yanez*, so I concur in the judgment as to that issue as well.

But in my view *Tirado* and *Yanez* (and Presiding Justice Ramirez's similar analysis) are mistaken, and I believe it is worth setting forth my reasons.

The issue is whether a court that strikes a firearm enhancement under Penal Code section 12022.53 (section 12022.53) has discretion to impose an uncharged lesser included enhancement. (*Morrison*, *supra*, 34 Cal.App.5th at pp. 220-221; *Yanez*, *supra*, 44 Cal.App.5th at pp. 455, 458.) *Morrison* holds that the court has that discretion (*Morrison*, at p. 220), but *Tirado* and *Yanez* hold that it does not (*Tirado*, *supra*, 38 Cal.App.5th at pp. 639-640; *Yanez*, at pp. 458-460).

Section 12022.53 provides for various firearm enhancements and, before the Legislature amended the statute in 2017, expressly prohibited the striking of those enhancements. (*Morrison*, *supra*, 34 Cal.App.5th at p. 221.) As amended, however, the statute now expressly allows for those firearm enhancements to be stricken "in the interest of justice." (§ 12022.53, subd. (h); see *Morrison*, at pp. 221-222.) So the question is whether, having stricken an enhancement pursuant to amended section 12022.53, the sentencing court has the power to impose an uncharged lesser included enhancement.

Prior case law uniformly holds that the court does have the power to impose an uncharged lesser included enhancement when a greater enhancement is stricken. (*People v. Fialho* (2014) 229 Cal.App.4th 1389, 1395-1396; *People v. Strickland* (1974) 11 Cal.3d 946, 961; *People v. Lucas* (1997) 55 Cal.App.4th 721, 743; *People v. Allen* (1985) 165 Cal.App.3d 616, 627; *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001-1002.) Those cases involved stricken enhancements that were either legally inapplicable or not

3

supported by sufficient evidence, rather than enhancements that were stricken in the interest of justice and through an exercise of the court's discretion. But I am aware of no reason why the judicial power to impose an uncharged lesser included enhancement would exist in the one context but not in the other. If a sentencing court has a long-established power to impose an uncharged lesser included enhancement after striking a greater enhancement that is legally inapplicable, why would that power disappear when the greater enhancement is stricken in the interest of justice under amended section 12022.53?

I consequently believe that *Tirado* and *Yanez* frame the issue incorrectly by asking whether the amended statute "conveys the power to change, modify, or substitute a charge or enhancement." (*Tirado*, *supra*, 38 Cal.App.5th at p. 643; see *Yanez*, *supra*, 44 Cal.App.5th at p. 458 ["the question we consider here is whether the statute, as amended, provides authority for a trial court to exercise discretion to impose a lesser included, uncharged enhancement"].) The question is not whether *the amended statute conveys the power to impose an uncharged lesser enhancement* (or change or modify an enhancement). Rather, the question is whether, having exercised its power under the amended statute to strike a greater enhancement, *the court still has its previously recognized power to impose an uncharged lesser*. Again, I am aware of no reason why it would not. The statutory amendment did not convey the power to impose the uncharged lesser. The court had that power already.

I am also unpersuaded by the separation of powers concerns articulated in *Tirado*, *supra*, 38 Cal.App.5th at page 644, and *Yanez*, *supra*, 44 Cal.App.5th at pages 459-460.

4

Under prior case law, when (1) the prosecution exercises its discretion to place an all-or-nothing wager by charging only a greater enhancement and no lessers, and (2) the prosecution loses because the greater enhancement turns out to be legally inapplicable or factually unsupported, the trial court has the power to spare the prosecution from the full consequences of its bad bet by imposing an uncharged lesser included enhancement. (*People v. Fialho*, *supra*, 229 Cal.App.4th at pp. 1395-1396.)  No one has ever thought the existence or exercise of that power raises separation of powers concerns because of judicial encroachment on prosecutorial discretion.  In my view, the separation of powers argument is similarly implausible here.

For similar reasons, I disagree with the separation of powers analysis in *People v. Garcia* (2020) 46 Cal.App.5th 786 (*Garcia*), which also follows *Tirado* and rejects *Morrison*.  *Garcia* asserts that the trial court's previously recognized power to impose an uncharged lesser included enhancement is merely a power "to salvage as much of the prosecutor's charging decision . . . as possible," so as to "effectuate" the prosecutor's exercise of discretion.  (*Garcia*, *supra*, at p. 793.)  In my view, it is nothing of the kind.  In the circumstances at issue, *the prosecution has exercised its discretion not to charge the lesser included enhancements*.  It could have charged them, but it chose not to.  Rather, it chose to go all-or-nothing.  If the only charged enhancement turns out to be legally inapplicable or factually unsupported, then effectuating the prosecutor's exercise of discretion would require imposing no enhancement at all.  That was the prosecutor's choice.  Imposing an uncharged lesser in those circumstances thus does not effectuate the prosecutor's exercise of discretion.  It thwarts it.  In effect, the holding of *Tirado* is that

5

such a power to thwart the prosecutor's exercise of discretion exists when it would benefit the prosecution but not when it would benefit the defense.

For all of these reasons, I respectfully disagree with *Tirado*, *Yanez*, and *Garcia* (and Presiding Justice Ramirez's similar analysis). But mindful of principles of *stare decisis*, I am aware of no basis to depart from our division's recent decision in *Yanez*, so I concur in the judgment.[1]

MENETREZ   
J.

---

[1] I recognize that there are various interpretations of the familiar proposition that there is no horizontal *stare decisis* in the California Court of Appeal. (*In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409.) In my view, we should treat the published opinions of other divisions and districts as persuasive authority, but we should normally follow the published opinions of our own division, absent a sufficient reason to depart from them. (See *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1180 & fn. 9; *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 637; *Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1203-1204; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2019) ¶¶ 14:193-14:193.2.) When our division has recently taken a position on an issue that is dividing the Courts of Appeal, I do not believe that my mere disagreement with our division's position is a sufficient reason.